USCA1 Opinion

 

 April 3, 1995 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-2025 IN RE WINTHROP OLD FARM NURSERIES, INC., Debtor. _____________________ WINTHROP OLD FARM NURSERIES, INC., Appellant, v. NEW BEDFORD INSTITUTION FOR SAVINGS, ET AL., Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ____________________ ERRATA SHEET ERRATA SHEET Please make the following change to the opinion issued on March 22, 1995. Page 3, first full paragraph, line 3 - change "far" to "fair" United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 94-2025 IN RE WINTHROP OLD FARM NURSERIES, INC., Debtor. _____________________ WINTHROP OLD FARM NURSERIES, INC., Appellant, v. NEW BEDFORD INSTITUTION FOR SAVINGS, ET AL., Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard G. Stearns, U.S. District Judge] ___________________ ____________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ ____________________ Stephen E. Shamban with whom Ann Brennan and Stephen E. Shamban ___________________ ____________ __________________ Law Offices, P.C. were on brief for appellant. _________________ Richard M. Peirce with whom Roberts, Carroll, Feldstein & Peirce, __________________ _____________________________________ Inc. was on brief for appellees. ____ ____________________ March 22, 1995 ____________________ STAHL, Circuit Judge. Chapter 11 debtor Winthrop STAHL, Circuit Judge. _____________ Old Farm Nurseries, Inc. ("Winthrop"), appeals the district court order affirming the bankruptcy court's decision that, to determine the status of the claim of undersecured junior mortgagee New Bedford Institution for Savings ("NBIS") pursuant to 11 U.S.C. 506(a), Winthrop's real property (the "Property") should be valued at its fair market value. We affirm. I. I. __ BACKGROUND BACKGROUND __________ Winthrop operates a retail garden shop and commercial landscaping business on the Property, located at 462 Winthrop Street in Rehoboth, Massachusetts. On February 2, 1993, Winthrop filed a petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). On July 16, 1993, Winthrop filed its Disclosure Statement and Plan of Reorganization (the "Plan"). The Plan provides that Winthrop will retain all of its assets except for the Property, which is to be transferred to a new entity apparently controlled by Winthrop's principal, which will in turn lease it back to Winthrop. Thus, under the Plan, Winthrop effectively retains control of the Property and its use. The Property is encumbered by a first mortgage in the amount of $287,000 held by Northeast Savings, F.A., and by tax liens of approximately $20,000. NBIS, the holder of a -2- 2 junior mortgage on the Property, is owed approximately $576,000. The parties stipulated to a liquidation value for the Property of $300,000 and a fair market value of $400,000. Winthrop's Plan would transfer the Property to the new entity free and clear of all liens except for the Northeast Savings mortgage. The Plan would "strip down" the NBIS mortgage to the liquidation value of the Property, leaving NBIS's claim entirely unsecured. The Plan proposes a payout of twenty cents on the dollar over a four-year period to unsecured creditors, whose claims, including NBIS's, total approximately $756,761. NBIS objected to the Plan, claiming that the Property should be valued at fair market value, not liquidation value. If the Property is valued at fair market value, NBIS would have a secured claim in the amount of approximately $100,000, with the remainder of its claim unsecured. The bankruptcy court, citing a line of cases holding that fair market or going concern value is the appropriate standard in valuing collateral that a Chapter 11 debtor proposes to retain and use, granted NBIS's motion and valued the Property at $400,000. The district court affirmed, and Winthrop now appeals. II. II. ___ STANDARD OF REVIEW STANDARD OF REVIEW __________________ -3- 3 "In an appeal from district court review of a bankruptcy court order, we independently review the bankruptcy court's decision, applying the `clearly erroneous' standard to findings of fact and de novo review to conclusions of law." Grella v. Salem Five Cent Sav. Bank, 42 ______ _________________________ F.3d 26, 30 (1st Cir. 1994). Thus, our review is de novo. The bankruptcy court's interpretation of 506(a) presents a question of law. Its application of the statute to the particular facts of this case poses a mixed question of law and fact, subject to the clearly erroneous standard, unless the bankruptcy court's analysis was "infected by legal error." Williams v. Poulos, 11 F.3d 271, 278 (1st Cir. ________ ______ 1993). III. III. ____ DISCUSSION DISCUSSION __________ Section 506(a) governs the determination of whether any portion of a creditor's claim should be classified as a secured claim: (a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the ____________________________ extent of the value of such creditor's _________________________________________ interest in the estate's interest in such _________________________________________ property, or to the extent of the amount ________ subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be ______________________ -4- 4 determined in light of the purpose of the _________________________________________ valuation and of the proposed disposition _________________________________________ or use of such property, and in _____________________________ conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest. 11 U.S.C. 506(a) (emphasis added). The statute does not direct courts to choose any particular valuation standard in a given type of case. As evidenced by the emphasized language in the statute's second sentence, Congress apparently did not intend that courts would use either a ___ liquidation or fair market value standard exclusively, envisioning instead a flexible approach by which courts would choose a standard to fit the circumstances. Relevant legislative history buttresses this notion. The House Report states: Subsection (a) of [ 506] separates an undersecured creditor's claim into two parts-he has a secured claim to the extent of the value of his collateral; he _______________________ has an undersecured claim for the balance of his claim. "Value" does not ____________________ necessarily contemplate forced sale or _________________________________________ liquidation value of the collateral; nor _________________________________________ does it imply a full going concern value. _________________________________________ Courts will have to determine value on a _________________________________________ case-by-case basis, taking into account _________________________________________ the facts of each case and the competing _________________________________________ interests in the case. _____________________ H.R. Rep. No. 595, 95th Cong., 1st Sess. 356 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6312 (emphasis added). _________ __ The Senate Report's commentary on 506 offers little insight, but its commentary on 361 -- the Code section that provides for adequate protection payments to secured -5- 5 creditors in some circumstances -- is further evidence that Congress intended that courts would sometimes value collateral at something greater than its liquidation price: Neither is it expected that the courts will construe the term value to mean, in every case, forced sale liquidation value or full going concern value. There is wide latitude between those two extremes although forced sale ____________ liquidation value will be a minimum. ___________________________________ In any particular case, especially a ____________ reorganization case, the determination of _________________________________________ which entity should be entitled to the _________________________________________ difference between the going concern _________________________________________ value and the liquidation value must be _________________________________________ based on equitable considerations arising _________________________________________ from the facts of the case. __________________________ S. Rep. No. 989, 95th Cong., 2d Sess. 54 (1978), reprinted in _________ __ 1978 U.S.C.C.A.N. 5787, 5840 (emphasis added). Although this commentary is not specifically addressed to 506(a), it is nevertheless relevant, since a valuation for 361 purposes necessarily looks to 506(a) for a determination of the amount of a secured claim.1 Indeed, since adequate protection payments immediately deplete the estate's assets - - even before it is certain that a reorganization plan will be confirmed -- one would expect that the valuation standard used to determine whether such payments are justified should be extremely conservative. See In re Case, 115 B.R. 666, 670 ___ __________  ____________________ 1. See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest ___ _________________________ ________________________ Assoc., 484 U.S. 365, 371-72 (1988) (stating that statutory ______ construction is a "holistic endeavor" and defining value of "entity's interest in property" entitled to adequate protection under 361 and 362 in light of meaning of value of "creditor's interest" in property under 506(a)). -6- 6 (Bankr. 9th Cir. 1990) (stating in dictum that in a valuation for adequate protection purposes, "forced liquidation would be assumed and a deduction for selling costs would be logical"). Nevertheless, the Senate language suggests that even in a 361 context, a court might value collateral at something more than its liquidation value. We have not previously considered this issue. A number of courts, however, including four Circuit Courts, have adhered to this clear expression of congressional intent and declined to value collateral that a debtor proposes to retain based on a hypothetical foreclosure sale. These courts reason that because the reorganizing debtor proposes to retain and use the collateral, it should not be valued as ___ if it were being liquidated; rather, courts should value the collateral "in light of" the debtor's proposal to retain it and ascribe to it its going-concern or fair market value with no deduction for hypothetical costs of sale.2  ____________________ 2. See, e.g., In re McClurkin, 31 F.3d 401, 405 (6th Cir. ___ ____ _______________ 1994) (holding that 506(a) "does not require or permit a reduction in the creditor's secured claim to account for purely hypothetical costs of sale" of Chapter 13 debtor's residence); Matter of Rash, 31 F.3d 325, 329-31 (5th Cir. _______________ 1994) (holding that truck to be retained by Chapter 13 debtor must be valued at replacement cost to debtor because foreclosure value fails to account for debtor's proposed use of collateral); Lomas Mortgage USA v. Wiese, 980 F.2d 1279, __________________ _____ 1284-86 (9th Cir. 1992) (holding that second sentence of 506(a) precludes deduction of hypothetical costs of sale in valuing Chapter 13 debtor's real property to be retained by debtor), cert. granted and judgment vacated on other grounds, ___________________________________________________ 113 S. Ct. 2925 (1993) (remanding for reconsideration in light of Nobleman v. American Sav. Bank, 113 S. Ct. 2106 ________ ___________________ -7- 7 Other courts, however, have chosen to read 506(a) as requiring in virtually all cases a valuation of collateral limited to the net amount a secured creditor could recover if it seized or foreclosed on the collateral and disposed of it in accordance with applicable state law.3 These courts tie  ____________________ (1993)); In re Balbus, 933 F.2d 246, 252 (4th Cir. 1991) _____________ (same); In re Case, 115 B.R. 666, 670 (Bankr. 9th Cir. 1990) __________ (holding that for Chapter 12 plan confirmation purposes, hypothetical costs should not be deducted from fair market value in valuing collateral to be retained by debtor); In re _____ Arnette, 156 B.R. 366, 368 (Bankr. D. Conn. 1993) (holding _______ that motor vehicle to be retained by chapter 13 debtor "should be valued at the price the debtor could get for it in a free and open market, i.e. its fair market value"); In re _____ Green, 151 B.R. 501 (Bankr. D. Minn. 1993) (valuing car to _____ be retained by Chapter 13 debtor at retail, rather than wholesale value); Matter of Savannah Gardens-Oaktree, 146 ____________________________________ B.R. 306, 310 (Bankr. S.D. Ga. 1992) (using fair market value to value apartment complex in Chapter 11 adequate protection context); In re Usry, 106 B.R. 759, 762 (Bankr. M.D. Ga. ___________ 1989) (in light of fact that Chapter 11 and Chapter 12 debtors plan to retain collateral to produce income, secured claim equaled amount of stipulated fair market value without deduction for hypothetical liquidation costs); cf. In re ___ ______ Davis, 14 B.R. 226 (Bankr. D. Me. 1981) ("Where a confirmed _____ chapter 11 reorganization plan contemplates retention of the collateral by the debtor for use in its ongoing business operations, collateral . . . should be ascribed its fair market value[,]" but reasonable costs of sale deducted in valuing security interest) (Cyr, J.). 3. See, e.g., In re Demakes Enters., Inc., 145 B.R. 362, 365 ___ ____ ___________________________ (Bankr. D. Mass. 1992) (valuing meat processing plant at liquidation value); In re Ledgemere Land Corp., 125 B.R. 58, __________________________ 61 (Bankr. D. Mass. 1991) (bank's mortgage on Chapter 11 debtor's real property that debtor intended to retain and eventually develop "is worth only what [property] will bring at foreclosure"); In re Robbins, 119 B.R. 1, 5 (Bankr. D. ______________ Mass. 1990) (valuing Chapter 11 debtor's investment property at foreclosure value); In re T.H.B. Corp., 85 B.R. 192, 196 ___________________ (Bankr. D. Mass. 1988) ("The fact that the Debtor is a going concern is no reason to value the collateral under the going concern standard unless it appears likely that the secured party will actually receive that value from its collateral -8- 8 their interpretation to the first sentence of 506(a), reasoning that even if the debtor proposes to retain and make profitable use of the collateral in the reorganized enterprise, the statute commands a valuation of the "creditor's interest" in the property -- i.e., of the lien -- ____ and that value can only reflect what the creditor would be entitled to recover from the collateral under non-bankruptcy law. Thus, if the collateral is subject to the Uniform Commercial Code, the creditor's interest would reflect what it could recover from a commercially reasonable sale under the U.C.C.; if real estate, then from a foreclosure sale, perhaps with some value added if the creditor has the right and the wherewithal to bid-in, hold and resell the property on the open market. See, e.g., In re Tenney Village Co., 104 ___ ____ ________________________ B.R. 562, 567 (Bankr. D.N.H. 1989) (valuing property at fair market value because mortgage holder had ability to bid in and obtain fair market value through later private sales); In __ re Robbins, 119 B.R. 1, 5-6 (Bankr. D. Mass. 1990) ___________ (recognizing second mortgage holder's bid-in rights but declining to ascribe any value to them where circumstances make it "unreasonable to expect" creditor to exercise them); see generally James F. Queenan, Jr., Standards for Valuation ___ _________ _______________________ of Security Interests in Chapter 11, 92 Com. L.J. 18, 60 ______________________________________  ____________________ through a pending sale.") -9- 9 (1987) (real estate mortgage holder's bid-in rights "should be valued as an inherent part of his property interest"). We are persuaded that the first line of cases correctly interprets the statute. This interpretation gives meaning to both sentences of 506(a), and enables bankruptcy courts to exercise the flexibility Congress intended. By retaining collateral, a Chapter 11 debtor is ensuring that the very event Winthrop proposes to use to value the property -- a foreclosure sale -- will not take place. At the same time, the debtor should not be heard to argue that, in valuing the collateral, the court should disregard the very event that, according to the debtor's plan, will take place - ____ - namely, the debtor's use of the collateral to generate an income stream. In ordinary circumstances the present value of the income stream would be equal to the collateral's fair market value. Under such circumstances, a court remains faithful to the dictates of 506(a) by valuing the creditor's interest in the collateral in light of the proposed post-bankruptcy reality: no foreclosure sale and economic benefit for the debtor derived from the collateral equal to or greater than its fair market value. Our approach allows the bankruptcy court, using its informed discretion and applying historic principles of equity, to adopt in each case the valuation method that is fairest given the prevailing circumstances. -10- 10 The interpretation championed by the second line of cases renders the second sentence of 506(a) virtually meaningless. Moreover, it would allow a reorganizing debtor to reap a windfall by stripping down the lien to liquidation value and quickly selling the collateral at fair market value, thus pocketing equity that would have been completely beyond reach save for the filing of the bankruptcy petition. Cf. Butner v. United States, 440 U.S. 48, 55 (1979) ___ ______ ______________ (bankruptcy law should "prevent a party from receiving a windfall merely by reason of the happenstance of bankruptcy") (quotation omitted). It is true that the debtor's intention to reorganize under Chapter 11 is what gives the collateral its going-concern value. And while it is also true that, absent a reorganization plan, the creditor might not recover the difference -- assuming that there is in fact a difference -- between the collateral's fair market value and the amount recoverable through its state law rights, we would not characterize this additional recovery as a "windfall" to the creditor, and certainly not one that will spur secured creditors to eschew their state law remedies and seek refuge in the comfortable confines of the bankruptcy courts. We find that the bankruptcy court correctly interpreted 506(a) as according it flexibility in choosing among possible standards of valuation, and properly applied the statute to the particular facts of this case. Winthrop -11- 11 proposes in its Plan to retain control of the Property and continue using it in its nursery and landscaping business to generate income. In light of this proposed use, the bankruptcy court committed no error in valuing the Property at its stipulated fair market value. -12- 12 IV. IV. ___ CONCLUSION CONCLUSION __________ For the foregoing reasons, the order of the district court is Affirmed. Affirmed ________ -13- 13