USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 99-9004

 IN RE: INDEPENDENT ENGINEERING COMPANY, INC.,

 Debtor,

 _____________________
 
 THOMAS MILLER, ESQ.,
 
 Appellant,
 
 v.
 
 U.S. TRUSTEE, ALFRED J. PETERSON, AMERICAN ELGIN,
 INDEPENDENT ENGINEERING COMPANY, INC., U.S. TRUSTEE,
 
 Appellees.
 
 
 
 APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
 
 OF THE FIRST CIRCUIT
 
 
 
 
 Before
 
 Boudin, Circuit Judge,
 Bownes, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 
 
 
 Thomas Miller, with whom Miller Law Office was on brief, for
appellant.
 John P. Fitzgerald, III, Assistant United States Trustee, with
whom Gary L. Donahue, Attorney Advisor, United States Department of
Justice, was on brief, for appellee.

November 30, 1999

 Stahl, Circuit Judge. Thomas Miller appeals from a
decision of the Bankruptcy Appellate Panel ("BAP") for the First
Circuit. That decision affirmed an order of the United States
Bankruptcy Court for the District of Massachusetts (the "bankruptcy
court"), disqualifying Miller from serving as counsel for
Independent Engineering Company, Inc. (the "Debtor"), and requiring
him to return all fees and retainers to the Debtor. For the
reasons set forth below, we affirm.
 I.
 Background
 We draw the facts of this case, which are not in dispute,
from the opinion of the BAP:
 On September 29, 1993, the Debtor,
 Independent Engineering Company, Inc., filed a
 voluntary petition for relief under Chapter 11
 of the Bankruptcy Code, 11 U.S.C. 101, et.
 seq. On that same date, the Debtor filed a
 Motion to Employ Thomas Miller as counsel, a
 supporting affidavit and a "Statement pursuant
 to Rule 2016(b)." At that time, Miller's
 affidavit and rule 2016 Statement reflected
 that the source of the $10,000 retainer [for
 Miller's services] was the company's
 president, Al Peterson. The initial
 application, affidavit and rule 2016 statement
 did not set forth the terms of the engagement
 or the fee agreement between the Debtor and
 Miller.
 . . . .
 
 On October 27, 1993, the Debtor filed
 an amended motion to employ counsel that
 incorporated a copy of a fee agreement by and
 between the Debtor, Miller, and Peterson.
 (footnote omitted.) Paragraph 2 of the fee
 agreement stated that "[Miller's] Firm will be
 paid $10,000 as a security deposit retainer." 
 Paragraph 6 provided for monthly billing
 against the retainer, with the retainer to be
 replenished by the Debtor. [Paragraph 4
 provided for any balance remaining in the
 retainer to be "refunded to the Client,"
 designated by Paragraph 1 as Independent
 Engineering Company, Inc. The fee agreement
 also indicated that the source of the
 retainer, Alfred Peterson, was designated as a
 third party guarantor and "not [a] client[] of
 the Firm."]

 . . . .

 On October 29, 1993, the [Bankruptcy]
 Court endorsed the amended motion to employ as
 follows: "Application approved.
 Notwithstanding paragraph 6 of the attached
 agreement, all compensation shall be subject
 to approval by the court upon appropriate
 application. /s/Joan N. Feeney."

 . . . .

 On December 2, 1993, Miller filed his
 First Amendment to the Rule 2016(b) Statement
 wherein he disclosed for the first time that
 he had taken draws against the retainer and
 had received post-petition payments from the
 Debtor as follows:

 Oct. 9, 1993: $3,007.80 (billed against
 retainer)

 Oct. 29, 1993: $3,007.80 (post-petition
 payment by the Debtor)

 Nov. 30, 1993: $4,612.80 ($3,088.68
 billed against retainer)

 As of December 2, 1993, Miller had
 filed no fee applications. The Court had
 approved no fees; it had authorized no
 payments. In response to Miller's December 2
 disclosure, the Court ordered him to file an
 interim fee application[, which Miller did on
 January 7, 1994]. . . . The United States
 Trustee objected [on February 3, 1994 to
 Miller's First Interim Fee Application and
 filed a Motion to Vacate Miller's employment,
 based on Miller's lack of disinterestedness]. 
 After a hearing [on February 15, 1994], the
 bankruptcy court entered its order vacating
 the October 29, 1993 endorsed order approving
 Miller as counsel and further ordered Miller
 to disgorge all retainers and fees.

 The bankruptcy court instructed the Debtor to obtain new
counsel by March 2, 1994. Miller, who did not request
reinstatement, appeals the bankruptcy court's ruling insofar as it
required him to disgorge his fees and retainer.
 II.
 Standard of Review
 We review a bankruptcy court's findings of fact for clear
error and examine its conclusions of law de novo. See Winthrop Old
Farm Nurseries, Inc. v. New Bedford Inst. for Sav. (In re Winthrop),
50 F.3d 72, 73 (1st Cir. 1995). The bankruptcy court's
interpretation of the Bankruptcy Code presents a question of law. 
See id. The application of the code to a particular case poses a
mixed question of law and fact, which is subject to review for clear
error unless the bankruptcy court's analysis was infected by legal
error or based on a mistaken impression of applicable legal
principles. See Williams v. Poulos, 11 F.3d 271, 278 (1st Cir.
1993); see also Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S.
844, 855 n.15 (1982); In re Winthrop, 50 F.3d at 73. 
 III.
 Discussion
 Miller contends that the BAP erred in upholding the order
of the bankruptcy judge because, when he drew against his client's
retainer, the lawfulness of his conduct was unclear. On appeal,
Miller claims that: he was disinterested, he was not required to
obtain prior judicial approval for withdrawals from the retainer
because it was not property of the estate, his fee agreement
permitted replenishment of the retainer by the Debtor, and the
bankruptcy court's order was ambiguous.
 Relying upon In re Printcrafters, Inc., 233 B.R. 113, 120
(D. Colo. 1999), a case in which counsel who had drawn on a retainer
prior to the filing of a bankruptcy petition was nevertheless found
to be "disinterested," Miller argues that his draws were not
necessarily proscribed as a matter of law. Unlike the attorney in
Printcrafters, however, Miller not only drew on a pre-petition
retainer but also failed to disclose that fact in his amended motion
for employment or in any accompanying statements to the bankruptcy
court. 
 Miller also attempts to justify his failure to submit a
timely fee application for either of his first two withdrawals by
citing cases suggesting that prior judicial approval is not required
for draws on retainers not the property of the estate. See In re
McDonald Bros. Constr., Inc., 114 B.R. 989, 994 (Bankr. N.D. Ill.
1990); Indian Motocycle Assocs. III Ltd. Partnership v.
Massachusetts Hous. Auth., 66 F.3d 1246, 1254 (1st Cir. 1995). We
need not reach this question because the fee agreement itself
provided for any balance of the retainer to be "refunded to the
client," in this case, the Debtor.
 But even if the cases permitting certain withdrawals from
retainers without prior judicial approval were on all fours with
this case, notice to parties in interest, a hearing, and judicial
approval are required when counsel seeks compensation from the
debtor's estate. See 11 U.S.C. 330(a), 331; In re Chapel Gate
Apartments, Ltd., 64 B.R. 569, 575 (Bankr. N.D. Tex. 1986) (holding
that "fees in bankruptcy cases . . . are subject to review,
modification, and outright cancellation by the Court"). Moreover,
the fact remains that Miller ignored an order of the bankruptcy
court requiring him to obtain prior judicial approval for any
compensation he was to receive notwithstanding that paragraph 6 of
the fee agreement purported to allow him to bill and collect
additional reimbursement directly from the debtor. This order was,
of course, entirely lawful, see 11 U.S.C. 328(c), 329(a),
330(a)(1)(A) & (B), 331; In re Martin, 817 F.2d at 180; In re Chapel
Gate Apartments, Ltd., 64 B.R. at 575, and Miller's violation of it
properly subjected him to sanctions, see 11 U.S.C. 328(c),
329(b); In re Martin, 817 F.2d at 182-183 (observing that the
failure to disclose a fee arrangement can provide grounds for the
disqualification of debtor's counsel and the disgorgement of fees);
see also Rome v. Braunstein, 19 F.3d 54, 58, 62 (1st Cir. 1994);
Smith v. Marshall (In re Hot Tin Roof, Inc.), 205 B.R. 1000, 1003-04
(B.A.P. 1st Cir. 1997); In re Saturley, 131 B.R. 509, 517 (Bankr.
D. Me. 1991).
 Miller also argues that even if he properly was subject
to sanctions, the total disgorgement of his retainer and fees
constituted an abuse of the bankruptcy court's discretion. We
disagree. Bankruptcy courts historically have been accorded wide
discretion to oversee the terms and conditions of a debtor's
engagement of professionals because "[t]he bankruptcy judge is on
the front line, in the best position to gauge the ongoing interplay
of factors and to make the delicate judgment calls which such a
decision entails." In re Martin, 817 F.2d at 182. Section 327(a)
authorizes an estate trustee or a debtor in possession to employ
"disinterested" professionals who "do not hold or represent an
interest adverse to the estate." 11 U.S.C. 327(a); see also id.
 328(c) (allowing courts to deny compensation and reimbursement to
such professionals). 
 Section 329 requires debtor's counsel to disclose to the
court the amount and the source of any compensation that counsel has
received, or expects to receive, from the client for the year that
preceded the bankruptcy petition. See 11 U.S.C. 329. 
Professionals employed in bankruptcy cases are subject to
"particularly rigorous conflict-of-interest restraints," Rome, 19
F.3d at 57, whereby they must not evidence "even [an] appearance of
impropriety," id. at 58 (internal quotation marks and citation
omitted). The bankruptcy court has continuing authority to revisit
an order employing a particular attorney to represent a debtor. See
11 U.S.C. 328(c); see also Rome, 19 F.3d at 58; In re Hot Tin
Roof, Inc., 205 B.R. at 1003. Every potential conflict must be
disclosed, and upon finding that counsel has failed to comply, the
bankruptcy judge can impose various remedies, including
disqualification of counsel and the denial of fees. See In re
Martin, 817 F.2d at 182-83; see also In re Chapel Gate Apartments,
Ltd., 64 B.R. at 575 (holding that fees can be denied even where the
failure to disclose results from negligence rather than from
design).
 By failing to timely disclose and secure prior judicial
approval of withdrawals from the pre-petition retainer and
subsequent replenishment by the Debtor, Miller flouted a lawful
order of the bankruptcy court and thereby frustrated its ability to
oversee the bankruptcy proceedings. On these facts, we cannot say
that the bankruptcy court's decision was clearly erroneous. 
 Affirmed. Costs to appellees.