**In re REVCO D.S., INC. et al., Debtors.**

**Bankruptcy Nos. 588–1308 to 588–1321, 588–1305, 588–1761 to 588–1812 and 588–1820.**

United States Bankruptcy Court, N.D. Ohio.

April 30, 1990.

John Silas Hopkins, III, Baker & Hostetler, Cleveland, Ohio, for debtors.

Stuart E. Hertzberg, Pepper, Hamilton & Scheetz, Detroit, Mich., for Unsecured Trade Creditors' Committee.

Conrad Morgenstern, U.S. Trustee, Cleveland, Ohio.

Brad Eric Scheler, Fried, Frank, Harris, Shriver & Jacobson, New York City, for Unsecured Noteholders' Committee.

Robert J. White, O'Melveny & Myers, Los Angeles, Cal., for Unofficial Committee of Secured Bank Lenders.

Richard Lieb and William J. Rochelle, Kronish, Lieb, Weiner & Hellman, New York City, for Unofficial Preferred Equity Committee.

Frederick M. Luper, Luper, Wolinetz, Sheriff & Niedenthal, Columbus, Ohio, for Odd Lot Trading, Inc. Creditors' Committee.

---

FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CONFIRMATION OF JOINT PLAN OF REORGANIZATION FOR ODD LOT

HAROLD F. WHITE, Bankruptcy Judge.

The hearing on confirmation of the Joint Plan of Reorganization for Odd Lot dated January 19, 1990 and April 19, 1990 Modification (the "Plan") was held on April 19 and April 24, 1990 before this Court. Due Notice of said hearing and time to file objections was provided by the Debtors (Docket No. 1547). Counsel for the Debtors, the United States Trustee ("UST") and the United States of America, a creditor for unpaid internal revenue taxes, (hereinafter "IRS") appeared at the hearing.

Based upon the pleadings filed and the presentations of evidence and a witness at the hearing, the Court makes the following Findings of Fact and Conclusions of Law.

FINDINGS OF FACT

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334(a) and General Order No. 84 of the U.S. District Court, Northern District of Ohio. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L).

2. Until November 22, 1988, the Odd Lot entities operated approximately one hundred retail close-out merchandise stores in the Northeastern United States. (Docket No. 1518, p. 10). Odd Lot consists of 55 separate entities (collectively "Odd Lot") which were directly or indirectly wholly owned subsidiaries of Revco D.S., Inc. ("Revco") at the commencement of these proceedings. Odd Lot filed voluntary petitions under chapter 11 of the Bankruptcy Code in this Court in October, 1988. Odd Lot Trading, Inc. is a wholly owned subsidiary of Odd Lot Parent Corporation which, in turn, is a wholly owned subsidiary of Revco. (Docket No. 1518, p. 10). The remaining 53 Odd Lot entities were generally "shell" corporations.

3. On November 11, 1988, this Court approved the sale of substantially all of the assets of Odd Lot to the Riklis Family Corporation. The proceeds from the sale will be distributed under the Plan. The total amount to be distributed approximates $36 million. Pursuant to the Plan most of the corporations comprising Odd Lot will be liquidated and dissolved, with the exception of Odd Lot Parent and Odd Lot Trading.

4. On February 27, 1990, the Court entered an Order Approving the Odd Lot disclosure statement as amended. (Docket No. 1518).

5. On March 7, 1990, the Debtors mailed copies of the disclosure statement

and proposed Plan with ballots to class 4 creditors, the only impaired creditors entitled to vote. (Docket No. 1548).

6. The Plan as filed provides for the "substantive consolidation" of all the assets and liabilities of Odd Lot. The disclosure statement and Plan both indicated the assets and liabilities would be consolidated. No objections to the substantive consolidation were filed.

7. On March 30, 1990, the IRS filed an objection to the proposed Plan. (Docket No. 1575).

8. The IRS asserts that the Plan fails to conform with several of the statutory requirements for confirmation in that the Plan provides for "complete satisfaction" of claims of the IRS of an amount not to exceed $4 million although the IRS has filed amended proofs of claim for estimated internal revenue taxes of $23,677,062.84.

9. On April 3, 1990, the IRS filed a Notice of Rejection of the Plan. (Docket No. 1578). The IRS is the only party objecting to confirmation of the Plan.

10. On April 18, 1990, Debtors filed a modification to the Plan. This modification affected only the Debtors, Revco and Odd Lot. (Docket No. 1595).

11. On April 17, 1990, the Debtors filed an acceptance of the Plan as modified. (Docket No. 1596).

12. All of the Revco and Odd Lot Committees recommended confirmation of the Plan as filed and modified. The UST had no comment on the confirmation. (*Tr.*[1] p. 57).

13. At the hearing, Debtors presented one witness, Mr. Robert T. Raaf, vice-president of tax at Revco. Prior to his employment at Revco, Mr. Raaf was employed by Arthur Andersen & Co. for 18 years, the last seven years as a tax partner. (*Tr.* p. 52).

14. The Plan was filed by Debtors pursuant to 11 U.S.C. 1121(a).

---

**1.** *"Tr."* indicates reference to the written transcript of the hearing held on April 19, 1990.

15. No objection to confirmation of the Plan has been made based on the ground that the Plan was proposed in bad faith or by means forbidden by law and from the evidence presented the Plan has been proposed in good faith.

16. No securities are to be issued and no property is to be acquired under the Plan except for the payment of cash as outlined in the Plan.

17. The Officers of Odd Lot Parent Corporation are: Boake A. Sells, president, chief executive officer and director; Jack A. Staph, vice president and secretary; Gregory K. Raven, vice president and treasurer; Joseph A. Barbera, vice president and assistant treasurer. (*Tr.* pp. 31–32).

The Officers of Odd Lot Trading, Inc. are: Boake A. Sells, president and director; Marvin Solganik, Ed Botto and Robert T. Raaf, vice presidents; Gregory K. Raven, treasurer and director and Jack A. Staph, secretary and director. There will be no change in officers or directors of Odd Lot Parent Corporation or Odd Lot Trading, Inc. if the Plan is confirmed. (*Tr.* p. 32).

18. The Debtors do not have any rates that are subject to approval by any governmental regulatory commission. (*Tr.* pp. 32–33).

19. Odd Lot has approximately $36 million available for distribution under the Plan; therefore, feasibility is not an issue. (*Tr.* p. 33).

20. Earlier in these chapter 11 proceedings, Revco held the position that the $133 to $135 million advanced by Revco to Odd Lot constituted a claim against Odd Lot. The Odd Lot Committee viewed the advances as Revco's equity interest in Odd Lot. Revco and the Odd Lot Committee reached a settlement of this dispute resulting in unsecured creditors receiving approximately 84.5 cents on the dollar for their claims. If the dispute had been litigated and Revco had prevailed in its position the unsecured creditors would have

(Docket No. 1606).

received approximately 17.5 cents on the dollar for their claims. (*Tr.* pp. 35–37).

21. Odd Lot has no obligations under any retiree benefit plans or programs. (*Tr.* p. 38).

22. All quarterly fees for the UST program are paid to date and any such future fees, as well as all future Odd Lot administrative fees, will be paid by Revco. (*Tr.*, pp. 37–38).

23. The net result of the voting by ballot on the Plan by class 4 creditors results in 345 votes of acceptance of the Plan and four votes rejecting the Plan. The results of voting on the Plan by dollar amount is $9,045,815.22 acceptance of the Plan and $16,334.43 rejection of the Plan.

24. The IRS has conducted and completed an approximate two and one-half year audit of Revco and its subsidiaries, including Odd Lot, for the fiscal years ending June 2, 1984, June 1, 1985, May 31, 1986 and December 29, 1986 (the "Audit Years"). The audit commenced on or about September, 1987. (*Tr.* p. 39).

25. Revco, along with its subsidiaries, including Odd Lot, filed a consolidated corporate income tax return for the Audit Years. Revco and its subsidiaries are jointly and severally liable for taxes due for the Audit Years.

26. On May 10, 1989, the IRS filed individual proofs of claim, with each claim totaling $100,548,444.73 in all 55 of the Odd Lot cases and the 13 Revco cases. (*Tr.* p. 40). The proofs of claim are for "Estimated Liability" for the Audit Years. (Docket No. 1594, Ex. A).

27. The IRS sent several "Notice of Proposed Adjustment" documents to Revco. These documents referred to both Revco and its subsidiaries. (*Tr.* p. 40, Docket No. 1594, Ex. B).

28. Based upon a computation of all the proposed adjustments received from the IRS, Mr. Raaf computed the net tentative tax due of approximately $3.4 million for the years in question ($8,381,681 tentative tax less December 29, 1986 overpayment of $5,031,827). (*Tr.* pp. 41–43, Docket No. 1594, Ex. C).

29. The net tentative tax amount of $3.4 million plus any possible interest owing is the basis for the $4 million amount provided for in the Plan to satisfy the IRS tax claims. (*Tr.* p. 43).

30. Debtors and the IRS have been in discussion of the tax claims and Debtors' proposed treatment thereof since November 1989. (*Tr.* p. 45).

31. On February 13, 1990, the IRS filed amended proofs of claim for estimated tax liability of $23,677,062.84 in each of the 55 individual Odd Lot cases and 13 Revco cases. The amended proofs of claim are for estimated tax liability and also provide for a setoff of $5,031,827, the overpayment for December 29, 1986 (hereinafter the "Estimated Claims"). (*Tr.* p. 46, Docket No. 1594, Ex. E).

32. Debtors informed the IRS that Odd Lot did not have $23 million available for the Estimated Claims. (*Tr.* p. 46).

33. The IRS field examination is now complete and Debtors have received the final reports on the examination. The final reports are dated March 14, 1990. (*Tr.* p. 46, Docket No. 1594, Exs. F and G). The net tax effect of the years in question is a net tax owing by the consolidated Revco group of $190,612. (*Tr.* p. 47, Docket No. 1594, Exs. F and G).

34. On March 16, 1990 the IRS delivered the District Director's 30–day letter to Debtors, this letter reiterates the net tax owing of $190,612. (*Tr.* p. 48). The 30–day letter provides Debtors with 30 days within which to object or protest the $190,612 amount of tax computed as owing and the findings of the examination. (*Tr.* p. 48).

35. Debtors indicated that they plan to request an appellate conference regarding the findings of tax due of $190,612 through the administrative appellate process of the IRS, as they are under the belief that they are entitled to a tax refund. (*Tr.* p. 49).

36. Debtors and the IRS disagreed as to the period of time the appeals process could last. Estimates ranged from as long as six months to two years after the protest is filed. (*Tr.* p. 50).

37. The parties admitted that the entire tax return is subject to review on appeal. (*Tr.* pp. 54–55).

38. There is an indeterminate amount of "restricted interest" which may also be assessed in conjunction with the $190,612 tax the Debtors owe the IRS. (*Tr.* p. 63). The IRS has not computed the exact amount of restricted interest but estimates that it totals several million dollars.

39. The Debtors' calculations of restricted interest range from amounts that the IRS owes to the Debtors to Debtors owing the IRS a maximum amount of $1.2—$1.3 million. Counsel for the Debtors was not aware of any calculations that amounted to several million dollars, as stated by the IRS.

40. Before making an income tax refund in excess of $200,000 the IRS must give 30 days notice to the Joint Committee on Taxation of the U.S. Congress to review the proposed income tax refund. (*Tr.* p. 54). The Joint Committee may recommend adjustments to any income tax refund. This process may average approximately one month to complete or may even be completed in one day.

41. To date Debtors have not filed a formal objection to the Estimated Claims.

42. Class 3 of the Plan consists of all tax claims.

43. Article III, Paragraph 3.3 of the Plan provides in pertinent part: "the I.R.S. shall not be paid on account of Allowed I.R.S. Tax Claims more than $4,000,000.00 plus interest as provided in Paragraph 7.2, if applicable."

44. The Plan provides for a tax reserve fund to be established which shall include $4 million in cash to pay the Estimated Claims. (Article VII, para. 7.2 of the Plan).

45. Pursuant to Article III, Paragraph 3.7 of the Plan "Classes 4 (all unsecured creditors) and 6 (all claims and interest of Odd Lot and Revco) are impaired. All other Classes are unimpaired."

46. Article X, paragraph 8.2 of the Plan states:

8.2 *I.R.S. Tax Claims.* Notwithstanding anything in the Plan to the contrary, nothing in the Plan shall release or be deemed to release Revco, successors and assigns of Revco, affiliates of Revco (other than Odd Lot), or present or former stockholders, directors, officers, agents, attorneys, and employees of Revco from liability based on the same subject matter as any I.R.S. Tax Claim.

47. The IRS presented no evidence at the hearing.

## ISSUE

DOES THE OBJECTION AND ARGUMENTS OF THE IRS PROHIBIT CONFIRMATION OF THE PLAN?

## DISCUSSION OF LAW

The IRS is the sole objecting party to the Plan. In its objection, the IRS asserts that the Plan fails to conform with several statutory requirements for confirmation of a plan, specifically, sections 1129(a)(1), 1129(a)(7), 1129(a)(8), 1129(a)(9)(C) and 1141(d)(3) of the Bankruptcy Code. The IRS argues that the $4 million proposed reserve fund in the Plan is insufficient to satisfy the Estimated Claims and payment of less than the full claim amount is violative of section 1141(d)(3), as the unpaid taxes would not be dischargeable under section 727(a) if this were a case under chapter 7 of the Bankruptcy Code.

Additionally, the IRS argues that since the Plan fails to provide for payment of its claims in full, while proposing to pay junior unsecured creditors, the Plan renders it an impaired claimant, rather than unimpaired as asserted by Debtors. The IRS argues further that as an impaired creditor it has not accepted the Plan nor would it receive under the plan "property of a value as of the effective date of the plan, that is not less than the amount that [the United States of America] would so receive or retain if the debtor[s] were liquidated under chapter 7 of this title [Title 11, U.S.C.] on such date," so that the proposed Plan is violative of section 1129(a)(7)(A) of the Bankruptcy Code [11 U.S.C. § 1129(a)(7)(A)].

The Debtors filed a response to the objections of the IRS ("Debtors' Response") (Docket No. 1594) and asserted that the Plan should be confirmed because the Plan sets aside an amount that will probably be sufficient to pay the Estimated Claims and also preserves the rights of the IRS against Revco. The Debtors further state that based upon the most recent IRS proposed adjustments of tax due of $190,612 the $4 million set aside in the Plan is more than sufficient to pay the IRS claim. (Debtors' Response, pp. 5, 8–9).

While the IRS asserts that the Plan fails to comply with five different provisions of the Bankruptcy Code its objections really concern one issue: Does the $4 million tax reserve fund in the Plan provide for payment in full of the Estimated Claims as required by section 1129(a)(9)(C) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(9)(C)? [2]

■ The proponent of a plan of reorganization has the burden of producing evidence to the Court that the plan satisfies section 1129(a). *In re Trail's End Lodge, Inc.*, 54 B.R. 898, 902 (Bankr.Vt.1985); *In re Martin*, 66 B.R. 921, 925 (Bankr.Mont. 1986); *In re Future Energy Corp.*, 83 B.R. 470, 481 n. 21 (Bankr.S.D.Ohio 1988).[3]

■ This Court finds that Debtors have presented substantial evidence to this Court, evidence not refuted by the IRS, that the $4 million reserve fund in the Plan is sufficient to satisfy the Estimated Claims and, accordingly, section 1129(a)(9)(C) is satisfied as well. While the Debtors have presented evidence to this Court, the IRS has presented only arguments based in speculation and uncertainty.

The evidence before the Court established that the proofs of claim filed by the IRS represented taxes for "estimated liability" only. (Findings Nos. 26 and 31). At the time of filing at least the first proofs of claim for $100,548,444.73 for each Odd Lot entity, the IRS's field audit was still in progress. (Findings Nos. 24 and 26). The IRS calculated several "proposed adjustments" which resulted in a significant reduction in the IRS determination of taxes owing by the Debtors to approximately $3.4 million. (Findings Nos. 27 and 28).

After the "proposed adjustments" were sent to Debtors and the IRS field audit completed the net tax owed as computed by the IRS and included in the 30–day letter is only $190,612. (Finding No. 33).

It is important and significant to this Court that the $190,612 amount, as calculated by the IRS, is the amount in the 30–day letter. The 30–day letter is issued by the District Director of the IRS, a party

---

**2.** The IRS asserts that the Plan fails to satisfy the requirements of the following Bankruptcy Code sections:

1) Section 1129(a)(1) because it "fails to comply with the applicable provisions of this title." The "applicable provision" with which it assertedly fails to comply is § 1129(a)(9)(C).

2) Section 1129(a)(7) because the IRS is impaired and has neither accepted the Plan nor will receive as much as it would in a chapter 7 liquidation. If $4 million is enough to pay the Estimated Claims in full as required by § 1129(a)(9)(C), then the IRS is not impaired.

3) Section 1129(a)(8) because the IRS is impaired by the provision of only $4 million for Estimated Claims and the IRS has not accepted the Plan. If $4 million is enough to pay the Estimated Claims as required by § 1129(a)(9)(C), then the IRS is not impaired.

4) Section 1141(d)(3) because the Plan discharges a debt for unpaid taxes that would not be dischargeable under § 727(a). If $4 million is enough to pay the Estimated Claims in full as required by § 1129(a)(9)(C), then there are no unpaid taxes. The 6–year deferral provision of § 1129(a)(9)(C) does not apply in this case.

Thus each of the IRS objections can be resolved by addressing the single issue noted above. If the issue is answered in the affirmative then all of the IRS objections are answered.

**3.** While it is a well-established principle that plan proponents bear the burden of proving compliance with section 1129(a) case law is not clear with respect to the burden of producing evidence for a party objecting to plan confirmation.

Since the parties have not raised the issue of the proper allocation of the burden of production with respect to objections to confirmation, this Court will not decide this issue. This Court does note that it finds persuasive the comments of Judge R. Guy Cole, Jr. on page 482, footnote 21 in *Future Energy Corp., supra.* "Some evidence in support of the objection must be adduced, or, if the objection is premised upon purely legal grounds, persuasive authority must be offered to support the objection."

who operates at a supervisory level at the IRS. (Finding No. 34). The integrity of the $190,612 amount is apparent to this Court as it is included in the 30–day letter, the letter upon which Debtors may begin the objection process through the appellate procedures of the IRS. (Finding No. 34).

The Court is further satisfied that the $4 million fund is sufficient to satisfy any "restricted interest" that may be assessed. The IRS has not computed the exact amount of any such "restricted interest" and could only vaguely state that it estimates it totals "several million dollars". (Finding No. 38). The Debtors' calculations are specific and at the highest amount would result in a total of $1.3 million, an amount clearly less than the $4 million reserve fund in the Plan. (Finding No. 39).

Additionally, this Court concludes that the IRS is not prejudiced under the Plan, not only because the $4 million reserve fund appears to be sufficient for taxes due, but also further in that Revco, the parent corporation and all its (non-Odd Lot) subsidiaries, remain jointly and severally liable if, in the unlikely event, any additional taxes are assessed for the Audit Years. (Finding No. 46). This Court concludes that the IRS has no valid objection to confirmation of the Plan which can be sustained by this Court.

■ A Bankruptcy Court is a court of equity and must control its cases to preserve judicial economy and permit the most expeditious, effective means of relief to parties. *Eisenberg v. Feiner, (In re Ahead By a Length)*, 78 B.R. 708, 710 (Bankr. S.D.N.Y.1987). If this Court were to deny confirmation of the Plan based on the specious objection of the IRS the creditors of Odd Lot would be prejudiced. The creditors have overwhelmingly accepted the Plan. (Finding No. 23). To deny confirmation until the Estimated Claims proceed through the administrative appeal process is complete could possibly take as long as two years. (Finding No. 36). A further delay of confirmation would result in a delay of payment to all the creditors and increase the speculation and trading of claims in these cases.

This Court is aware that Debtors could have chosen two alternative methods to resolve the Estimated Claims. First, Debtors could have objected pursuant to 11 U.S.C. § 505 or secondly, commenced a proceeding to estimate the Estimated Claims pursuant to 11 U.S.C. § 502(c). Debtors have chosen to resolve the tax issue through the administrative appeal process of the IRS.

At the hearing, the IRS argued that confirmation of the Plan, at this time, is "in effect ajudicating (sic) the tax claims without notice, without an opportunity to put on evidence and I believe that that would be error and would be reversible". *(Tr.* p. 68).

The position of the IRS that confirmation of the Plan is tantamount to adjudicating the Estimated Claims is incorrect. This Court is not adjudicating the Estimated Claims. This Court is ruling on the evidence before it as to whether or not section 1129(a)(9)(C) is satisfied. The evidence before this Court clearly indicates, as noted more fully earlier, that section 1129(a)(9)(C) is satisfied. Furthermore, the IRS has presented no evidence to this Court to the contrary. The IRS has only stated that the government is "not bound" by the $190,612 amount and possibly a different tax liability may be determined sometime in the future. This Court is not persuaded by the speculation of the IRS. The Debtors' evidence is persuasive and this Court concludes that section 1129(a)(9)(C) is satisfied.[4] As section 1129(a)(9)(C) is satisfied, the remaining statutory grounds for the objection of the IRS are moot.

■ In addition to addressing the objection of the IRS, this Court shall also determine, from the evidence presented at the hearing, whether or not the Plan satisfies the remaining subsections of section 1129(a). The Bankruptcy Court has a mandatory duty to evaluate a proposed plan of reorganization under section 1129(a),

---

4. This Court recognizes that estimation of any undetermined tax claims may be necessary at the time of confirmation of the plan of reorganization for the Revco entities.

whether or not any objections are raised. *Trail's End Lodge, supra,* at 902.

The Plan shows on its face that it complies with the applicable provisions of this title; therefore, section 1129(a)(1) is satisfied.

The Debtors have complied with the applicable provisions of this title in that they solicited approval of the Plan by mailing the approved Odd Lot disclosure statement, along with ballots, to the voting class on March 7, 1990. (Findings Nos. 4 and 5). Therefore, section 1129(a)(2) is satisfied.

No objection to confirmation of the Plan has been made on the ground that the Plan was proposed in bad faith or by any means forbidden by law. Bankruptcy Rule 3020(b)(2) provides that where no objection is timely filed, "the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues." Section 1129(a)(3) of the Bankruptcy Code is therefore satisfied. (Finding No. 15).

No securities are to be issued or property acquired under the Plan. Section 1129(a)(4) is therefore satisfied. (Finding No. 16).

The identities of the officers and directors to serve after confirmation have been disclosed (Finding No. 17); therefore, section 1129(a)(5) is also satisfied.

Section 1129(a)(6) is satisfied because Odd Lot has no rates subject to approval by a governmental regulatory commission. (Finding No. 18).

Classes 4 and 6 are impaired under the Plan. All members of class 6 have accepted the Plan. (Finding No. 45). Not all members of class 4 accepted the Plan. (Finding No. 23). The evidence before the Court shows that each member of class 4 will receive at least as much under the Plan as in a chapter 7 liquidation; therefore, section 1129(a)(7)(A)(ii) is satisfied. (Finding No. 20).

Classes 1, 2 and 5 are not impaired under the Plan. Classes 4 and 6 have accepted the Plan. (Finding No. 23). Class 3, consisting of all tax claims, including the IRS claim discussed earlier, is not impaired under the Plan. Section 1129(a)(8) is therefore satisfied.

All priority claims are in class 1, class 2, or class 3 of the Plan. Each and every priority claim will be paid in full, including the taxes owed to the IRS. Section 1129(a)(9) of the Bankruptcy Code is therefore satisfied.

Section 1129(a)(10) is satisfied because class 4 has accepted the Plan. (Finding No. 23). Class 6 does not count because it consists entirely of insiders.

Section 1129(a)(11) is satisfied as the Plan provides that the property of Debtors shall be liquidated. There will be no future liquidation or reorganization.

All fees payable under section 1930 of the Judicial Code, 28 U.S.C. § 1930, have been paid or will be paid as administrative claims under the Plan. (Finding No. 22). Section 1129(a)(12) is therefore satisfied.

There are no retiree benefits as defined in section 1114 of the Bankruptcy Code that are required to be continued. Section 1129(a)(13) of the Bankruptcy Code is therefore satisfied. (Finding No. 21).

Revco and Odd Lot are the only entities that are affected by the April 19, 1990 modification of the Plan. Revco and Odd Lot have accepted the modifications in writing. Section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019 are therefore satisfied.

## CONCLUSIONS OF LAW

Based upon the documents filed with this Court, as well as the evidence presented at the hearing, this Court concludes the following:

1) the Plan satisfies the requirements of section 1129(a) of the Bankruptcy Code, 11 U.S.C. § 1129(a);

2) the IRS has not presented a valid objection to the Plan and the rights of the IRS are not prejudiced, but rather protected under the Plan; accordingly the objection of the IRS is overruled; and,

3) the $4 million reserve fund provided for in the Plan is sufficient to satisfy the taxes owing to the IRS.

The foregoing Findings of Fact and Conclusions of Law are hereby entered in accordance with the findings and conclusions made at the April 24, 1990 hearing and in support of the Order of confirmation entered by this Court on April 26, 1990.