In re INDIAN MOTOCYCLE CO., INC., Indian Motocycle Apparel and Accessories, Inc., Indian Motocycle Manufacturing Co., Inc., Debtors.

United States of America, Appellant,

v.

Sterling Consulting Corp., Colorado Receiver and Steven M. Rodolakis, Chapter 7 Trustee, Appellees.

BAP No. MW 00–005.
Bankruptcy Nos. 93–41954–HJB, 93–41955–HJB, 94–52288–HJB.

United States Bankruptcy Appellate Panel of the First Circuit.

April 26, 2001.

Peter Sklarew, U.S. Department of Justice, Washington, DC, and Donald K. Stern, U.S. Attorney, on brief for the Appellant.

Joseph H. Baldiga, Paul W. Carey of Mirick, O'Connell, DeMallie & Lougee, Worcester, MA and Stephan M. Rodolakis, Mark S. Foss of Peters Massad & Rodolakis, Worcester, MA, on brief for the Appellees.

Before GOODMAN, DE JESÚS, VAUGHN, U.S. Bankruptcy Judges.

VAUGHN, Bankruptcy Appellate Panel Judge.

### ORDER VACATING OPINION AND JUDGMENT ISSUED MARCH 13, 2001

On March 13, 2001, the United States Bankruptcy Appellate Panel for the First Circuit (the "Panel") issued an Opinion reversing an order of the bankruptcy court below. On that same day, a Judgment was filed and entered. Thereafter, on March 23, 2001, the above named Receiver filed a motion for rehearing and/or reconsideration of the March 13, 2001 opinion and order. After consideration thereof, and due cause appearing therefor, the Opinion and Judgment dated March 13, 2001 are hereby **VACATED**. An Amended Opinion and Judgement shall enter forthwith.

This appeal arises out of a bankruptcy court order entered on December 30, 1999 approving the Chapter 7 Trustee's final accounts in these three administratively consolidated bankruptcy cases. For the reasons set out below the order of the bankruptcy court is reversed and the case is remanded for proceedings consistent with this opinion.

### I. BACKGROUND

These three bankruptcy cases have been pending since 1993. The history of the cases is too long and varied to accurately summarize here. However, for purposes of this appeal, certain background facts are relevant.

On July 15, 1993, an involuntary Chapter 7 petition was filed against Indian Motocycle Company, Inc. and Indian Motocycle Apparel and Accessories Company, Inc. In February of 1994, Indian Motocycle Manufacturing filed a voluntary Chapter 11 petition which was converted to Chapter 7 on October 23, 1995. At the same time all three estates (collectively "Debtors") were consolidated and a Chapter 7 trustee was appointed. Appellee Stephan Rodolakis (the "Trustee") was appointed successor Chapter 7 trustee of all three estates on August 14, 1997.

Appellee Sterling Consulting Corporation (the "Receiver") is the appointed Receiver of a separate corporation, Indian Motorcycle Manufacturing, Inc., resulting from an action in the Colorado district court commenced in 1995, *Eller Industries, Inc. v. United States of America*, Civ. Action No. 95–Z–777. In October of 1995, the Receiver purchased 100% of the stock of the Debtors as well as certain claims against the Debtors. Thus, the Receiver is both a creditor and the owner of the Debtors' equity.

After negotiation, the original Chapter 7 trustee in the Massachusetts bankruptcy cases and the Receiver entered an agreement for the joint sale of the assets of the bankruptcy estates and the receivership estate which would allocate sufficient funds from the sale to the bankruptcy estates to pay all claims, with the remainder going to the Receiver as owner of the equity. The agreement was approved by the bankruptcy court on January 19, 1996 and the Colorado district court on January 29, 1996. Ultimately, in late 1998 and early 1999, both courts approved the joint sale of the assets. As part of the sale, the parties agreed that $3.5 million would be allocated to the Debtors and held in escrow in order to satisfy any claims against those estates. The allocation of those proceeds to the Debtors raised potential tax liability that is the subject of the instant dispute.

Following the approval of the sale, the Receiver and the Trustee had multiple disagreements as to the disposition of the $3.5 million held in escrow, including claims by the Receiver that it was entitled to certain of the funds. Ultimately, the Trustee and Receiver negotiated a settlement which was filed with the bankruptcy court on September 8, 1999. As part of the settlement, the Trustee and the Receiver agreed to divide jurisdiction over remaining issues between the Colorado district court and the bankruptcy court. Although the parties agreed that liability for federal taxes of the bankruptcy estates remained with the Trustee, they also agreed that the Colorado district court would be responsible for determining the amount of such taxes. The bankruptcy court approved the settlement agreement on September 21, 1999. The Internal Revenue Service ("IRS") was served with the settlement agreement although it was not a party in the bankruptcy case and had no previous involvement in the case. The IRS was not served with a copy of the settlement agreement in the Colorado case.

On October 29, 1999, the Trustee filed tax returns on behalf of the bankruptcy estates for the years 1994 to 1998 seeking expedited audits pursuant to § 505(b) of the Bankruptcy Code, while the Receiver simultaneously filed a motion in the Colorado district court for a determination that the bankruptcy estates owed no taxes for those years and the yet unfinished 1999 tax year. The IRS objected to the motion in the Colorado district court on grounds that it lacked subject matter jurisdiction to determine the taxes of the bankruptcy estates.

On December 22, 1999, the Trustee filed his final report and account and "Trustee's Emergency Motion for Approval of Final Accounts" on the grounds that the Receiver might incur substantial tax liability if the disbursements were delayed beyond the end of the year. The Trustee indicated that he believed that the bankruptcy estates had no tax liability based on communications from the IRS that the estates would be treated as subchapter S corporations, and thus their income would pass through to the Receiver, as owner of the equity.[1] This time the IRS was served with the motion.

A hearing on the final account was held on December 28, 1999, at which the IRS appeared. From the transcript of that

---

1. Based on the assumption that the Debtors would be treated as subchapter S corporations, the Trustee believed the Receiver would be responsible for any tax liability of the Debtors. Thus, the Trustee sought to avoid negative tax implications for the Receiver by making distributions in the 1999 tax year. However, the IRS argued at the December 28, 1999 hearing that the debtor corporations would likely not qualify for subchapter S status because their stock was owned by another corporation.

hearing the actions giving rise to this appeal are revealed. At the outset the attorney for the IRS indicated that the IRS had made a determination to audit the 1994 to 1998 tax returns filed by the Trustee. She indicated her belief that there could be as much as a $1.2 million tax liability for the Debtors. That figure was apparently based on an assumption by the IRS that the assets of the estates had been sold for $3.5 million and represented the maximum tax at the 34% corporate tax rate. However, the attorney for the IRS made clear that the IRS had not had an opportunity to evaluate the tax returns to determine the amount of any tax liability and that it was relying only on the representations of the Trustee and the Receiver. The attorney for the Receiver, who took the position that there was no tax liability, acknowledged that under the IRS's reasoning the maximum tax liability would be $1.2 million, but argued that the $450,000 it offered to place in escrow would be sufficient to cover any tax liability after crediting deductions.

At the close of the hearing, the bankruptcy judge and the attorney for the IRS discussed the IRS's concerns. The attorney for the IRS indicated that she did not have authority to agree to a compromise in which the Colorado court would take jurisdiction to entertain the tax matters. Although the bankruptcy judge acknowledged that the IRS was not agreeing to a compromise, he ordered that $1.2 million be placed in escrow and deemed to fully satisfy the IRS's claim.

On December 30, 1999, a telephonic follow-up hearing was held to go over the proposed order. The transcript reveals that the bankruptcy judge ordered that the automatic 10 day stay would be waived so that the Trustee could make immediate distributions in order to avoid having to make distributions after the close of the 1999 tax year. The attorney for the IRS inquired as to what effect that order would have on the IRS's right to appeal, to which the bankruptcy judge indicated that because the IRS was fully protected by the escrow its rights would not be prejudiced.

On December 30, 1999, the bankruptcy court issued its "Findings of Fact, Conclusions of Law and Order Approving Trustee's Amended Final Accounts" (the "December 30, 1999 Order"). In the Order, the bankruptcy judge acknowledged the IRS's objection to the final accounts on the grounds that it had not yet had the opportunity to fully assess the Debtors' tax liability. However, the bankruptcy court found the compromise between the Receiver and the Trustee in the best interest of the estate and ordered that the accounts be approved, distributions be made according to the accounts, and that $1.2 million be distributed to the Receiver to be held in escrow and deemed to satisfy any claim for taxes by the IRS. Furthermore, the order ceded jurisdiction to determine tax liabilities to the Colorado district court and ordered that no stay could be imposed on any basis. The IRS now appeals from that order.

## II. APPELLATE JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 158(a) and (c), and Rule 8001–1(d)(1) of the Local Rules for the Bankruptcy Appellate Panel for the First Circuit. 28 U.S.C. §§ 158(a) and (c) (1988 & Supp.1998); 1ST CIR. B.A.P. R. 8001–1(d)(1) (1998). The parties, pursuant to Rule 8001–1, have not elected to have their appeal heard by the District Court for the District of Massachusetts. 1ST CIR. B.A.P. R. 8001–1(d)(1). The bankruptcy court's findings of fact are evaluated pursuant to

the "clearly erroneous" standard of review and its conclusions of law are reviewed de novo. *Grella v. Salem Five Cent Savings Bank,* 42 F.3d 26, 30 (1st Cir.1994). The bankruptcy court's interpretation of particular statutes is a question of law. *In re Winthrop Old Farm Nurseries, Inc.,* 50 F.3d 72, 73 (1st Cir.1995). Its application of a statute to the facts before it "poses a mixed question of law and fact, subject to the clearly erroneous standard, unless the bankruptcy court's analysis was 'infected by legal error.'" *Id.* (quoting *Williams v. Poulos,* 11 F.3d 271, 278 (1st Cir.1993)).

## III. ISSUES

A. Is the appeal moot because the IRS did not obtain a stay pending appeal and failed otherwise to preserve the issues now before the panel?

B. Did the bankruptcy court err by ceding jurisdiction to the Colorado district court to determine the Debtor's tax liability pursuant to 11 U.S.C. § 505?

C. Did the bankruptcy court err by ordering a final distribution of the assets of the bankruptcy estate and capping the claim of the IRS at 1.2 million?

## IV. DISCUSSION

A. Is the Appeal Moot?

■ The Appellees contend that there is no ripe issue or controversy before the panel because the IRS failed to seek a stay pending appeal. As a result, the Trustee distributed the assets of the estate pursuant to the December 30, 1999 Order, consisting of a dividend to unsecured creditors of approximately sixty-two percent of their claims and a distribution to the Receiver of $1.2 million to be held in escrow pending the outcome of the tax liability issue in the Colorado court. The Trustee argues that it is now unlikely that he would be able to recover all of the payments, and therefore the mootness doctrine should apply.

■ This panel has "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.... For that reason, if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed." *Church of Scientology of California v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (internal citations omitted).

Following the bankruptcy court's December 30, 1999 order, no motion for stay pending appeal was filed by the IRS. The IRS contends that such a request would have been futile because the bankruptcy judge ordered that the automatic ten-day stay would be waived in order for distribution to be made before the end of the year. We are not persuaded by the IRS's plea that it was helpless in the wake of the bankruptcy court's order. Although a motion for stay pending appeal is ordinarily brought directly to the bankruptcy judge, Bankruptcy Rule 8005 specifically provides for such motions to be brought directly to the district court or to the bankruptcy appellate panel, the only requirement being "the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge." Fed. R. Bankr.P. 8005. Indeed, the bankruptcy appellate panel regularly receives "emergency" motions for stays pending appeal and acts promptly upon those motions.

The IRS's failure to obtain a stay is not fatal, however, as "[t]he failure to obtain a stay is not sufficient ground for a finding of mootness." *Rochman v. Northeast Utilities Service Group (In re Public Service Co. of New Hampshire),* 963 F.2d 469,

473 (1st Cir.1992), cert. denied *Rochman v. Northeast Utilities Service Co.*, 506 U.S. 908, 113 S.Ct. 304, 121 L.Ed.2d 226 (1992). The order here did not involve a sale of the Debtor's property pursuant to section 363 of the Bankruptcy Code which ordinarily may not be reversed absent a stay pending appeal. *Anheuser–Busch, Inc. v. Miller (In re Stadium Management Corp.)*, 895 F.2d 845, 847 (1st Cir.1990). Rather, the IRS seeks to reverse the order of the bankruptcy court distributing the assets of the estate pursuant to the Trustee's final account. Of the $3.5 million distribution, $1.2 million was distributed to the Receiver, and is being held by the Receiver in an escrow account. The Order also entitles the Receiver to the interest accruing on the escrowed funds. Where the order appealed involves distribution to a creditor who is a party to the appeal, the appeal is not moot. *United States v. Valley National Bank (In re Decker)*, 199 B.R. 684 (9th Cir. BAP 1996).

The IRS also seeks the reversal of the bankruptcy court's order ceding jurisdiction over the determination of tax liability to the Colorado district court. The issue goes directly to the question of administration of the bankruptcy estate, which it argues rests solely within the jurisdiction of the district of Massachusetts. If the IRS's argument is correct, the Colorado district court cannot, under any circumstances, decide the issue of tax liability. As the Supreme Court noted in *Church of Scientology*, even where a court cannot return parties to their pre-order status, an appeal is not moot where some form of meaningful relief can be fashioned. See *Church of Scientology*, 506 U.S. at 12, 113 S.Ct. 447.

Nor do we find that the application of the "equitable mootness" doctrine is appropriate. Courts have applied the "equitable mootness" doctrine where although

some relief could be granted, equitable considerations favoring finality of judgments of the bankruptcy court prevail. See *Public Service*, 963 F.2d at 471–72. The "equitable mootness" doctrine will be applied where an unwarranted failure to seek a stay has allowed a change in circumstances to such a degree that a remedy is impracticable or impossible. *Hicks, Muse & Co., Inc. v. Brandt (In re Healthco International, Inc.)*, 136 F.3d 45 (1st Cir.1998). We have previously indicated that we are capable of fashioning some meaningful relief in this case despite the lack of a stay pending appeal. Therefore, equitable mootness is not applicable.

We also reject the Appellees' contention that the IRS somehow waived its right to appeal by failing to properly object below. In the December 30, 1999 Order the bankruptcy court acknowledged that the IRS objected to the final accounts and was seeking to "enjoin distributions to the claimants in the Debtors' cases" prior to determination of the Debtors' tax liabilities. See Appendix, Doc. # 784 at 12. Furthermore, at the December 28, 1999 hearing, the IRS and the Court discussed the IRS's objection to any settlement ceding jurisdiction over the determination of the tax liability to the Colorado district court. The bankruptcy judge responded that it understood the IRS's position, but that it was "not seeking the agreement of the United States ...." See Appendix, Doc. # 789 at 45. This panel finds that to the extent the IRS was required and had the ability to raise objections below, such objections were made and acknowledged by the bankruptcy court.

B. Determination of the tax liability.

The IRS asserts that the bankruptcy court must determine core matters before it and has no authority to cede jurisdiction over matters within the exclusive jurisdic-

tion of the bankruptcy court. Alternatively, even if the bankruptcy court could abstain from hearing core matters, the IRS argues that it did not engage in a proper abstention analysis.

■ Pursuant to 28 U.S.C. §§ 1334(a) and 157(a) bankruptcy courts, via authority passed from the district court, have original and exclusive jurisdiction over bankruptcy cases. The bankruptcy court is empowered to determine core proceedings arising under Title 11 or in a case under Title 11. 28 U.S.C. § 157(b)(1). The determination of a debtor's administrative tax liability pursuant to § 503(b) of the Bankruptcy Code is a core proceeding. *See id.* at § 157(b)(2)(A) (matters concerning administration of the estate are core proceedings).

■ Pursuant to 28 U.S.C. § 1334(c) a bankruptcy court under some circumstances must, and under other circumstances may, abstain from hearing core or non-core matters.[2] Section 1334(c)(2) requires mandatory abstention from non-core matters which can be timely adjudicated in state court in a previously commenced action. *Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.),* 45 F.3d 702, 708 (2nd Cir.1995). Section 1334(c)(1) allows permissive abstention in the "interest of justice, or in the interest of comity with State courts or respect for state law . . . ." 28 U.S.C. § 1334(c)(1). Permissive abstention may be exercised over core and non-core matters. *Id.*

The issue here does not invoke mandatory abstention pursuant to 28 U.S.C. § 1334(c)(2). Therefore, the question is

whether the bankruptcy court had discretion to abstain from determining the Debtors' administrative tax liability pursuant to § 1334(c)(1). We find that the matter was not proper for abstention.

■ Bankruptcy courts generally exercise their discretion to abstain in order to permit related state court matters to proceed separate from the bankruptcy proceeding. *See, e.g., Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),* 912 F.2d 1162 (9th Cir.1990); *Williams v. Citifinancial Mortgage Co., (In re Williams),* 256 B.R. 885 (8th Cir. BAP 2001). Abstaining from hearing a matter necessarily presumes that another court has jurisdiction to hear that matter. *See Williams,* 256 B.R. 885; King, 9 Collier on Bankruptcy ¶ 5011.02[1] (15th Ed.) (factors in determining whether to abstain include existence of a jurisdictional basis other than the bankruptcy court's jurisdiction). All three Debtors here filed their cases in the District of Massachusetts, where venue was proper pursuant to 28 U.S.C. § 1408(1). Once a bankruptcy case is commenced in a proper forum court, that court has exclusive jurisdiction over administration of the bankruptcy estate. Congress's intent that only one court should have jurisdiction over matters concerning the administration of the bankruptcy estate is evidenced by the addition of 28 U.S.C. § 1334(e) which specifies that the court in which a bankruptcy case is filed "has exclusive jurisdiction of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e). This language resolves "not

---

2. The December 30, 1999 Order did not invoke 28 U.S.C. § 1334 in "ceding" jurisdiction over determination of the tax liabilities to the Colorado district court. Rather, the bankruptcy court apparently based its order on its equitable powers pursuant to § 105 of the Bankruptcy Code. However, in order to "cede" jurisdiction to determine the tax liability of the Debtors, the bankruptcy court had to first abstain from hearing that matter itself. Therefore, we apply 28 U.S.C. § 1334.

808

only jurisdictional disputes between bankruptcy and state courts, but also disputes which might arise among the districts." *Cook v. Cook*, 215 B.R. 975, 978 (Bankr. E.D.Mich.1997).

■ As this panel previously noted, a bankruptcy court, "exercising the original and exclusive jurisdiction of the district court under 28 U.S.C. § 1334, cannot abstain from the administration of the case." *Sisters of Providence Health System, Inc. v. Summerfield Elm Manor (In re Summerfield Pine Manor)*, 219 B.R. 637 (1st Cir. BAP 1998). Because the Colorado district court was without jurisdiction to determine the tax liabilities of the bankruptcy estates, which are core matters within the exclusive jurisdiction of the bankruptcy court, the bankruptcy court erred by ceding jurisdiction over those issues to the Colorado district court.[3]

## C. Distributions from estate.

■ The remaining issues pertain to the IRS's objection to the final distribution of funds ordered by the bankruptcy court. Specifically, the IRS contends that the court lacked jurisdiction to distribute funds prior to determining the administrative taxes and lacked jurisdiction to estimate its claim before any tax liability was assessed.

At the outset, we note that the bankruptcy court's inconsistent positions are perplexing. The bankruptcy court on the one hand confers jurisdiction to determine the amount of the Debtors' tax liability to the Colorado district court while on the other endeavors to estimate the amount of the IRS's claim pursuant to § 502(c) and even retains jurisdiction to approve any settlement between the Debtors' and the IRS. *See* Appendix, Doc. # 784 at 16. Ordinarily, an estimated claim may have the same preclusive effect as any other order from a court of competent jurisdiction, raising the possibility that the bankruptcy court's order would invoke res judicata or collateral estoppel on the issue of the amount of the taxes. *See* 4 Collier on Bankruptcy ¶ 502.04[3]. However, we also note that under some circumstances an estimated claim may be limited by the court in deference to another court's jurisdiction over a matter. *See In re Bicoastal Corp.*, 122 B.R. 771, 774–75 (Bankr. M.D.Fla.1990). *See also* 4 Collier on Bankruptcy at ¶ 502.04[3]. Thus, we proceed with the understanding that the bankruptcy court was estimating the IRS's administrative tax claim only for the limited purpose of approving the final accounts subject to the Colorado district court's adjudication of the tax liability.

We find that the bankruptcy court erred by applying § 502(c) [4] to estimate the postpetition tax liability of the Debtors. Although § 505 [5] of the Bankruptcy Code

---

3. We acknowledge that the Colorado district court has ruled that it does in fact have jurisdiction to determine the tax liabilities of the bankruptcy estates. That decision is currently on appeal to the 10th Circuit. However, the Colorado court's decision is not before us and we decline to address that court's findings.

4. Section 502(c) provides:
There shall be estimated for purposes of allowance under this section—
(1) any contingent or unliquidated claim, the fixing or liquidation of which, as the

case may be, would unduly delay the administration of the case; or
(2) any right to payment arising from a right to an equitable remedy for breach of performance.
11 U.S.C. § 502(c).

5. Section 505 provides in pertinent part:
(a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed,

provides specific procedures for the determination of a debtor's tax liability, and thus provides the primary vehicle for litigating tax disputes, we acknowledge that some courts have suggested that § 502(c) provides an alternative means for determining a debtor's prepetition tax liability. *See In re Revco, D.S., Inc.,* 131 B.R. 615, 621 (Bankr.N.D.Ohio.1990) (debtors could challenge IRS's estimate of prepetition taxes through § 505 or through § 502(c)); *In the Matter of Carr,* 134 B.R. 370, 373 (Bankr.D.Neb.1991) (IRS could seek determination of prepetition claim through § 505 or § 502); *In re Southern Commodity Corp.,* 62 B.R. 4, 6 (Bankr.S.D.Fla. 1986) (IRS's restitution claim for improper prepetition refund could be heard pursuant to § 505 or § 502(c)). *But see* 15 Collier on Bankruptcy ¶ TX5.05 ("[I]t has not been authoritatively decided whether [§ 502(c) ] is applicable to a disputed tax claim."). However, we have not found a single case which has estimated a debtor's postpetition administrative tax claim pursuant to § 502(c).

The Appellees cite *In re Carib–Inn of San Juan Corp.,* 130 B.R. 6 (Bankr.D.P.R. 1991) and *In re MacDonald,* 128 B.R. 161 (Bankr.W.D.Tex.1991) to support their position that postpetition taxes may be estimated pursuant § 502(c). We are not persuaded. The bankruptcy court in *Carib–Inn* denied a creditor's motion to reconsider an order disallowing an administrative claim for indemnity of a tort action because it was filed beyond the one year statute of limitations for bringing tort claims. Although the parties did not raise the issue, the bankruptcy judge in that case noted that the creditor should have moved for an estimation of the claim pursuant to § 502(c). *Carib–Inn,* 130 B.R. at 8. That portion of the decision dealing with § 502(c) is little more than dicta. To the extent that it could be read to suggest postpetition tax liability should be estimated under § 502(c), we disagree.

We believe that *MacDonald* actually supports the view we adopt. There, the court recognized that although § 502(c) "commends itself as the appropriate vehicle for estimating post-petition claims ... the section facially applies only to prepetition claims. Post-petition claims are governed by [§ ] 503." *MacDonald,* 128 B.R. at 165. However, the bankruptcy judge found that under some circumstances the process employed in a § 502(c) estimation "may be adapted to the handling of contingent or unliquidated administrative claims when the full-blown allowance process under [§ ] 503(b) would unduly delay the administration of the case ...." *Id.* Later in the opinion, the bankruptcy judge makes clear that he is not literally applying § 502(c) to the administrative claims: "Equally important to recall at this point, however, is that [§ ] 502(c) does not by its own terms apply to post-petition claims.... We have merely 'borrowed' the estimation procedure under the authority conferred on this court by Bankruptcy Rules 7016 and 9014 to regulate the manner in which evidence is presented in a contested matter." *Id.* at 167.

The more appropriate counsel from *MacDonald* is its warning that the procedures of § 502(c) should not be "borrowed"

---

whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
. . .
(b) A trustee may request a determination of any unpaid liability of the estate for any tax incurred during the administration of

the case by submitting a tax return for such tax and a request for such a determination to the governmental unit charged with responsibility for collection or determination of such tax.
. . .
11 U.S.C. § 505.

to estimate administrative claims "where to do so would defeat the legitimate ends of other provisions of the Bankruptcy Code." *Id.* Although it found that the estimation procedures of § 502(c) might be appropriate to evaluate the feasibility of a Chapter 11 plan, *MacDonald* warns that using estimation to determine the "outer limit of a claimant's right of recovery" as with a prepetition claim, would jeopardize due process rights of the holder of an administrative claim. *Id.* By capping its recovery at $1.2 million, the bankruptcy court here was determining the "outer limit" of the IRS's right of recovery.

■ We are convinced that the proper statutory construction requires that administrative tax liability be determined according to the provisions of § 505. Section 505 deals specifically and solely with the determination of a debtor's tax liability. Section 505(a) gives the court broad, and discretionary, authority to determine the amount of any tax liability, subject to certain exceptions, whether or not assessed or paid. Section 505(b) permits a trustee to request a determination of tax liability incurred during the administration of the case and sets out the procedures for doing so. To the extent there is an argument that the general language of § 502(c) may be stretched to cover even postpetition administrative claims, we follow the established rule of statutory construction that "a more specific statute covering a particular subject is controlling over a statutory subject in more general terms." *Balfour Beatty Bahamas, Ltd. v. Bush,* 170 F.3d 1048. (11th Cir.1999).

The transfer of assets to the receiver giving rise to the tax liability at issue in this case occurred in September of 1999. In October of 1999 the Trustee requested from the IRS expedited determination of taxes for tax years 1994 to 1998 pursuant to § 505(b). However, the Trustee did not seek a determination of the 1999 tax liabili-

ty as he could have done under § 505. The Trustee's failure to have the tax liability determined in the proper course does not permit the bankruptcy court to assess tax liability outside of the proper statutory framework, despite the concern that a delay would be prejudicial to the Receiver. Therefore, we must reverse the bankruptcy court's order capping the tax liability. Also, because the tax liability has not been properly determined, the order making final distributions must also be reversed.

## V. Conclusion

This panel finds that the bankruptcy court erred by ceding jurisdiction over the determination of the Debtors' tax liability to the Colorado district court. We further find that the bankruptcy court lacked jurisdiction to estimate the Debtors' tax liability pursuant to § 502(c) before the IRS had made any assessment of liability. Accordingly, we must reverse the order of the bankruptcy court approving the final accounts and making final distribution of the Debtors' assets.