**In re HANDY & HARMAN REFINING GROUP, INC., Debtor.**

No. 00–20845.

United States Bankruptcy Court, D. Connecticut.

Jan. 22, 2004.

Stephen M. Kindseth, Esq., Zeisler & Zeisler, P.C., Bridgeport, CT, for Debtor.

John K. Crossman, Esq., Zukerman, Gore & Brandeis, LLP, c/o Baker, O'Sullivan & Bliss, P.C., Raymond C. Bliss, Esq., Baker, O'Sullivan & Bliss, P.C., Wethersfield, CT, for Movants.

### RULING DENYING MOTION TO ENFORCE SETTLEMENT AGREEMENT AND COMPEL DISTRIBUTION

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

#### I.

Handy & Harman, Inc., Handy & Harman of Canada, Ltd., Sumco, Inc., Handy & Harman Electronic Materials Corp. ("HHEM") and Lucas Milhaupt, Inc. (collectively "the movants"), all creditors in this Chapter 11 case who have filed proofs of claim, on December 19, 2003, filed a motion entitled "Motion to Enforce Settlement Agreement and Compel Distribution" ("the motion"). Handy & Harman Refin-

ing Group, Inc. ("the debtor"), on December 23, 2003, filed an objection to the granting of the motion. The court held an evidentiary hearing on December 24, 2003, and the parties filed post-hearing briefs on January 8, 2004.

#### II.

##### Background

The debtor, reputedly one of the world's largest refiners of precious metals [1], on March 28, 2000, filed in this court a petition seeking to reorganize under Chapter 11 of the Bankruptcy Code. The court, on August 20, 2001, confirmed the Debtor's Modified Second Amended Plan of Reorganization ("the Plan"), which appointed Jed Horwitt, Esq. of Zeisler & Zeisler, P.C.[2] as Liquidating Custodian. The Plan, in Article V.A. and V. D., provides, in part:

V.A.

1. The Liquidating Custodian shall be authorized and empowered to exercise all of the powers of the Debtor in the place and to the exclusion of the Debtor's board of directors and officers.

. . .

3. The Liquidating Custodian, through the Debtor, shall have the right and duty to (a) examine all rights of action, including, without limitation, avoidance actions that constitute Property [of the estate] and file, litigate to final judgment, settle, or withdraw such rights of action . . . subject to Bankruptcy Court approval.

. . .

V.D.

. . . the Liquidating Custodian may . . . set off against any Claim and the distri-

---

1. *See In re Handy & Harman Refining Group, Inc.,* 262 B.R. 211 (Bankr.D.Conn.2001).

2. Zeisler & Zeisler, P.C. had been counsel to the Official Committee of Unsecured Creditors of the debtor's estate prior to confirmation of the Plan.

bution to be made pursuant to the Plan in respect of such Claim any claims of any nature which the Debtor may have against the holder of such Claim....

Stephen M. Kindseth, Esq. ("Kindseth") and Nicole L. Barber, Esq. ("Barber") of Zeisler & Zeisler, P.C. represent the Liquidating Custodian. The court has to date authorized three partial distributions from the debtor's estate to unsecured creditors totalling 40% of their allowed claims.[3]

The debtor, on March 26, 2002, filed approximately 150 adversary proceedings against numerous defendants to recover allegedly preferential transfers. Among these were six actions against the movants ("the preference proceedings"). The debtor, in addition, on August 14, 2002, filed an adversary proceeding against Handy & Harman, Inc. ("H & H"), seeking to recover $8,500,000 pursuant to the indemnification provisions in a purchase and sale agreement entered into between the debtor and H & H in 1996 ("the indemnity proceeding"). This action remains pending. *See Handy & Harman Refining Group, Inc. v. Handy & Harman, Inc. (In re Handy & Harman Refining Group)*, 287 B.R. 598 (Bankr.D.Conn.2003) (court denied H & H's motion to dismiss complaint).

The movants other than H & H received the first partial distribution. The Liquidating Custodian withheld payments to H & H of the first distribution and to all movants of the second and third distributions.[4]

Between December 10, 2003 and December 16, 2003, Barber, on behalf of the debtor, and Denise R. Polivy, Esq. ("Poli-

vy"), of Baker O'Sullivan & Bliss, P.C., on behalf of the movants, negotiated, through numerous e-mails, faxes and telephone calls, the terms of a proposed settlement of the preference proceedings. The movants claim the proposed settlement was to compromise a $24,000 preference action against HHEM for $12,000 (which amount was to be deducted from its withheld distributions); to dismiss the remaining preference actions against the other movants; and all movants to receive withheld distributions.

Barber prepared the initial drafts of a motion to seek bankruptcy court approval of the settlement. Numerous revisions and e-mails between attorneys Barber and Polivy ensued. On December 15, 2003, Polivy prepared a revised draft of the motion to compromise which she sent to Barber with an e-mail stating:

> Nicole, attached is a revised motion. My client has already OK'd it. If it's acceptable to you, let's consider it the final version and ready to sign. Client has OK'd dismissal stipulations and spreadsheet as well. Since I'm at home, Bill O'Sullivan will sign the compromise motion (assuming my revision is OK with you) and dismissal stips. They'll go out to you tonight via fedex....
>
> —Denise

(Exh. 20.)

The drafts of the motion and stipulations were signed by William O'Sullivan, Esq. ("O'Sullivan"), a partner at Polivy's firm, and sent via Federal Express to Barber. The following morning, Kindseth telephoned O'Sullivan and stated that the Liquidating Custodian would not release H &

---

**3.** 17.15% of allowed claims distributed on October 20, 2001; 13.83% distributed on February 26, 2002; 9.02% distributed on November 3, 2003. Disputed claimants' pro rata shares are placed in a Disputed Claims Reserve by the Liquidating Custodian.

**4.** The amount of withheld distribution to which H & H would otherwise be entitled is $600,111.59.

H's withheld distributions prior to resolution of the indemnity action. The movants filed the pending motion three days later. The debtor, at the hearing held on December 24, 2003, agreed to make the distributions due Handy & Harman of Canada, Ltd., Sumco, Inc., and Lucas Milhaupt, Inc., but objects to distributing funds to HHEM and H & H while the indemnity proceeding is pending.

### III.

#### Arguments of the Parties

H & H argues that the debtor agreed to the terms of the proposed settlement agreements, that H & H acted in reliance thereon, and that the court should enforce the terms and compel distribution of the withheld amounts to H & H. H & H contends that the evidence indicates that, through their conduct and the communications between Barber and Polivy, the parties had entered into a binding contract.

The debtor argues that the Plan provisions entitle the debtor to withhold any distributions to H & H and HHEM; that the parties did not enter into a binding settlement; and that any proposed settlement would be unenforceable in the absence of bankruptcy court approval.

The court, for reasons that follow, sustains the debtor's objection and concludes that none of the arguments of H & H for granting the motion are sustainable.

### IV.

#### Discussion

#### A.

■ As provided in Plan Art. V. D., the debtor may exercise a right expressly granted it to set off against a distribution to a creditor *"any claim of any nature"* which the debtor may have against the creditor. Such provision is a natural ex-

tension of the rights expressly provided for in Bankruptcy Code § 502(d). *See* note 6 *infra; Cf. Handy & Harman Refining Group, Inc. v. Coeur D'Alene Mines Corp. (In re Handy & Harman Refining Group, Inc.)*, 284 B.R. 333 (Bankr.D.Conn. 2002) (creditor's request to receive partial distribution denied where debtor is pursuing preference claim against creditor); *In re Shared Technologies Cellular, Inc.*, 281 B.R. 804, *aff'd* 293 B.R. 89 (D.Conn.2003) (no distribution to creditor until judicial determination of claim debtor made against creditor).

The court concludes that Plan Art. V.D. fully supports the position of the debtor and justifies the denial of the motion. The court will briefly discuss the other grounds H & H proffers.

#### B.

■ H & H argues that the communications establish that the parties entered into a binding agreement. The court finds the evidence more indicative of an ongoing negotiating process. References are to a "revision" (Exh. 6), "revised motion" (Exh. 7,13, 20), "draft dismissals" (Exh. 15), "revised spreadsheet" (Exh. 14). The e-mails in evidence contain numerous conditional statements. Polivy, in her last e-mail on December 15, 2003 states, "attached is a revised motion.... If it's acceptable to you, let's consider it the final version and ready to sign." (Exh. 20). Despite Barber's note in an e-mail that, "I need to run this by Steve [Kindseth] first, but this is what I anticipate" (Exh. 2), H & H claims to have been taken by surprise by Kindseth's involvement via telephone call on December 16, 2003.

The correspondence also makes it clear that the parties expected the terms of the proposed settlement to be in writing and to require the signatures of several par-

ties. (*See, e.g.*, references to necessary signatures in Exh. 15, 17, 20).

The court concludes that the parties did not enter into an enforceable agreement. The parties never explicitly considered or resolved the question at the heart of this proceeding—whether H & H's distribution may be withheld pending resolution of the indemnity proceeding.

### C.

■ Even if the debtor and H & H had agreed on all terms of the settlement, an agreement to compromise is not binding unless approved by the bankruptcy court. *See* Fed. R. Bankr.P. 9019(a)[5]; *Saccurato v. Masters, Inc. (In re Masters, Inc.)*, 149 B.R. 289, 291 (E.D.N.Y.1992) ("In general, debtors cannot bind their estates to compromises absent bankruptcy court approval."). H & H cites non-bankruptcy decisions concerning the enforceability of settlement agreements. However, such opinions are inapposite to the present proceeding. "The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968).

■ In deciding whether to approve a proposed settlement, the bankruptcy court should determine whether such settlement is both "fair and equitable" and "in the best interests of the estate." 10 *Collier on Bankruptcy* ¶ 9019.02 (15th ed. rev.2003). In light of the pendency of the indemnity action, in which the debtor seeks to recover $8,500,000 from H & H, distributing $600,111.59 to H & H is not in the best interest of the estate. The court, if presented with a motion to compromise pursuant to Rule 9019(a), would not approve it.[6]

### V.

#### *Conclusion*

In accordance with the foregoing discussion, the debtor's objection to the Motion to Enforce Settlement Agreement and

---

5. Fed. R. Bankr.P. 9019(a) provides:

    (a) *Compromise*

    On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

6. At the motion hearing, the court, sua sponte, raised the question of the applicability of Bankruptcy Code § 502(d). That section states:

    (d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

    The United States Supreme Court, in *Katchen v. Landy*, 382 U.S. 323, 330, 86 S.Ct. 467, 473, 15 L.Ed.2d 391 (1966), applying § 57(g) of the prior Bankruptcy Act which, in large part, corresponds to the present § 502(d), ruled that "a claim can neither be allowed nor disallowed until the preference matter is adjudicated." Section 502(d) extended the reach of § 57g to turnover actions, in addition to avoidance actions—e.g. § 542. The debtor filed its indemnity action not referring to any of the § 502(d) provisions. The debtor, in its post-trial brief, does not claim § 502(d) as a ground for objection, and the court does not consider its applicability in this ruling.

Compel Distribution is sustained and the motion denied. It is

SO ORDERED.